IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

SONDRA COX,

        Plaintiff,

vs.                         Case No. 10-2404-SAC

MICHAEL J. ASTRUE,
Commissioner of
Social Security,

        Defendant.


MEMORANDUM AND ORDER

    This is an action reviewing the final decision of the Commissioner of Social Security denying the plaintiff disability insurance benefits and supplemental security income payments. The matter has been fully briefed by the parties.

**I.  General legal standards**

    The court's standard of review is set forth in 42 U.S.C. § 405(g), which provides that "the findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive."  The court should review the Commissioner's decision to determine only whether the decision was supported by substantial evidence and whether the Commissioner applied the correct legal standards.  <u>Glenn v. Shalala</u>, 21 F.3d 983, 984 (10th Cir. 1994).  Substantial evidence requires more than a scintilla, but less than a preponderance, and is satisfied by such evidence that a reasonable mind might accept to support the

1

conclusion.  The determination of whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it really constitutes mere conclusion.  Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).  Although the court is not to reweigh the evidence, the findings of the Commissioner will not be mechanically accepted.  Nor will the findings be affirmed by isolating facts and labeling them substantial evidence, as the court must scrutinize the entire record in determining whether the Commissioner's conclusions are rational.  Graham v. Sullivan, 794 F. Supp. 1045, 1047 (D. Kan. 1992).  The court should examine the record as a whole, including whatever in the record fairly detracts from the weight of the Commissioner's decision and, on that basis, determine if the substantiality of the evidence test has been met.  Glenn, 21 F.3d at 984.

The Social Security Act provides that an individual shall be determined to be under a disability only if the claimant can establish that they have a physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity (SGA).  The claimant's physical or mental impairment or impairments must be of such severity that they are not only unable to perform their previous work but cannot, considering their age, education, and work experience, engage in

2

any other kind of substantial gainful work which exists in the
national economy.  42 U.S.C. § 423(d).

The Commissioner has established a five-step sequential
evaluation process to determine disability.  If at any step a
finding of disability or non-disability can be made, the
Commissioner will not review the claim further.  At step one, the
agency will find non-disability unless the claimant can show that
he or she is not working at a "substantial gainful activity."  At
step two, the agency will find non-disability unless the claimant
shows that he or she has a "severe impairment," which is defined
as any "impairment or combination of impairments which
significantly limits [the claimant's] physical or mental ability
to do basic work activities."  At step three, the agency
determines whether the impairment which enabled the claimant to
survive step two is on the list of impairments presumed severe
enough to render one disabled.  If the claimant's impairment does
not meet or equal a listed impairment, the inquiry proceeds to
step four, at which the agency assesses whether the claimant can
do his or her previous work; unless the claimant shows that he or
she cannot perform their previous work, they are determined not
to be disabled.  If the claimant survives step four, the fifth
and final step requires the agency to consider vocational factors
(the claimant's age, education, and past work experience) and to
determine whether the claimant is capable of performing other

jobs existing in significant numbers in the national economy.

Barnhart v. Thomas, 124 S. Ct. 376, 379-380 (2003).

The claimant bears the burden of proof through step four of the analysis. Nielson v. Sullivan, 992 F.2d 1118, 1120 (10th Cir. 1993). At step five, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in the national economy. Nielson, 992 F.2d at 1120; Thompson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993). The Commissioner meets this burden if the decision is supported by substantial evidence. Thompson, 987 F.2d at 1487.

Before going from step three to step four, the agency will assess the claimant's residual functional capacity (RFC). This RFC assessment is used to evaluate the claim at both step four and step five. 20 C.F.R. §§ 404.1520(a)(4), 404.1520(e,f,g); 416.920(a)(4), 416.920(e,f,g).

## II. History of case

This case has a long history and has been pending for over 10 years. Plaintiff filed her claim for disability benefits on February 8, 2001. Administrative law judge (ALJ) Susan B. Blaney issued her 1st decision on May 29, 2003. The Appeals Council remanded the case on June 30, 2006 (R. at 22). On March 21, 2008, ALJ Blaney issued her 2nd decision (R. at 22-32). The Appeals Council denied plaintiff's request for review on May 28, 2010 (R. at 12-14). Plaintiff alleges that she has been disabled

4

since December 29, 2000 (R. at 22).  Plaintiff is insured for
disability insurance benefits through December 31, 2005 (R. at
23).  At step one, the ALJ found that plaintiff has not engaged
in substantial gainful activity since the alleged onset date of
disability (R. at 23).  At step two, the ALJ found that plaintiff
had the following severe impairments: fibromyalgia; headaches,
variously diagnosed as migraine and muscular, mostly controlled
with medication; and mood disorder, NOS (R. at 23).  At step
three, the ALJ determined that plaintiff's impairments do not
meet or equal a listed impairment (R. at 24-25).  After
determining plaintiff's RFC (R. at 29), the ALJ found at step
four that plaintiff is able to perform past relevant work (R. at
29).  In the alternative, at step five, the ALJ found that
plaintiff could perform other jobs that exist in significant
numbers in the national economy (R. at 29-30).  Therefore, the
ALJ concluded that plaintiff was not disabled (R. at 30).

**III.  Did the ALJ err in finding that plaintiff's impairments do
not meet or equal listed impairment 12.02?**

At step three, plaintiff has the burden of demonstrating,
through medical evidence, that his/her impairments meet all of
the specified medical criteria contained in a particular listing.
Riddle v. Halter, 10 Fed. Appx. 665, 667 (10th Cir. March 22,
2001).  An impairment that manifests only some of those criteria,
no matter how severely, does not qualify.  Sullivan v. Zebley,

5

493 U.S. 521, 530, 110 S. Ct. 885, 891 (1990).  Because the

listed impairments, if met, operate to cut off further inquiry,

they should not be read expansively.  <u>Caviness v. Apfel</u>, 4 F.

Supp.2d 813, 818 (S.D. Ind. 1998).

    Plaintiff claims that the ALJ erred by rejecting the

testimony of Dr. Nelson that plaintiff's impairment met listed

impairment 12.02A.  That impairment is as follows:

> 12.02 Organic Mental Disorders: Psychological
> or behavioral abnormalities associated with a
> dysfunction of the brain. History and
> physical examination or laboratory tests
> demonstrate the presence of a specific
> organic factor judged to be etiologically
> related to the abnormal mental state and loss
> of previously acquired functional abilities.
>
> <u>The required level of severity for these
> disorders is met when the requirements in
> both A and B are satisfied, or when the
> requirements in C are satisfied.</u>
>
> A. Demonstration of a loss of specific
> cognitive abilities or affective changes and
> the medically documented persistence of at
> least one of the following:
>
> 1. Disorientation to time and place; or
>
> 2. Memory impairment, either short-term
> (inability to learn new information),
> intermediate, or long-term (inability to
> remember information that was known sometime
> in the past); or
>
> 3. Perceptual or thinking disturbances (e.g.,
> hallucinations, delusions); or
>
> 4. Change in personality; or
>
> 5. Disturbance in mood; or

6. Emotional lability (e.g., explosive temper outbursts, sudden crying, etc.) and impairment in impulse control; or

7. Loss of measured intellectual ability of at least 15 I.Q. points from premorbid levels or overall impairment index clearly within the severely impaired range on neuropsychological testing, e.g., the Luria-Nebraska, Halstead-Reitan, etc.;

AND

B. Resulting in at least two of the following:

1. Marked restriction of activities of daily living; or

2. Marked difficulties in maintaining social functioning; or

3. Marked difficulties in maintaining concentration, persistence, or pace; or

4. Repeated episodes of decompensation, each of extended duration;

OR

C. Medically documented history of a chronic organic mental disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support, and one of the following:

1. Repeated episodes of decompensation, each of extended duration; or

2. A residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or

3. Current history of 1 or more years'

7

> inability to function outside a highly
> supportive living arrangement, with an
> indication of continued need for such an
> arrangement.

20 C.F.R. Pt. 404, Subpt. P, App. 1 (2011 at 509-510, emphasis
added).

At a hearing on July 20, 2007, Dr. Nelson, board certified
in neurology and neurophysiology (R. at 729), testified that it
was his opinion that plaintiff met listed impairment 12.02 (R. at
745).  For purposes of 12.02A, Dr. Nelson indicated that
plaintiff had memory impairment and a change in personality or
mood (R. at 746).  However, regarding the 12.02B criteria, Dr.
Nelson only indicated that plaintiff was markedly impaired in
concentration, persistence, or pace (R. at 746).  Dr. Nelson did
not testify that plaintiff had a marked impairment in either
activities of daily living or in maintaining social functioning.
Furthermore, Dr. Nelson did not testify that plaintiff had
repeated episodes of decompensation.

Plaintiff argues that Dr. Nelson's testimony establishes
that plaintiff's impairments meet listed impairment 12.02A (Doc.
22 at 26).  However, in order to meet the listed impairment,
plaintiff must demonstrate that both 12.02A and 12.02B are
satisfied.[1]  Dr. Nelson did not testify that plaintiff's
impairments met two of the four criteria set forth in 12.02B.  In

---

[1]Plaintiff does not argue that plaintiff's impairments meet
or equal 12.02C.

order to meet listed impairment 12.02B, there must be evidence
that at least two of the 12.02B criteria have been met.
Plaintiff fails to point to any other evidence to establish that
two of the criteria of 12.02B have been met in this case.

Furthermore, the ALJ relied on a psychological evaluation,
including testing, performed by Dr. Davenport in 2007 (R. at 24,
580-586). Dr. Davenport opined that plaintiff had no limitations
in 7 categories, and only mild[2] limitations in 3 other categories
(R. at 584-585). Thus, the court finds that plaintiff has failed
to provide evidence that plaintiff's impairments meet or equal
12.02. Furthermore, the ALJ reasonably relied on a psychological
evaluation by Dr. Davenport to conclude that plaintiff's
impairments result in no more than mild limitations, and thus
fail to satisfy listed impairment 12.02.

**IV. Did the ALJ err in his consideration of the opinions of Dr.
Younger, a treating physician?**

The opinions of physicians, psychologists, or psychiatrists
who have seen a claimant over a period of time for purposes of
treatment are given more weight than the views of consulting
physicians or those who only review the medical records and never
examine the claimant. The opinion of an examining physician is
generally entitled to less weight than that of a treating

---

[2]"Mild" is defined as a slight limitation in the area, but
further states that the individual can generally function well
(R. at 584).

9

physician, and the opinion of an agency physician who has never seen the claimant is entitled to the least weight of all. Robinson v. Barnhart, 366 F.3d 1078, 1084 (10th Cir. 2004). When a treating source opinion is inconsistent with the other medical evidence, the ALJ's task is to examine the other medical source's reports to see if they outweigh the treating source's reports, not the other way around. Treating source opinions are given particular weight because of their unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultive examinations. If an ALJ intends to rely on a nontreating physician or examiner's opinion, he must explain the weight he is giving to it. Hamlin v. Barnhart, 365 F.3d 1208, 1215 (10th Cir. 2004). The ALJ must provide a legally sufficient explanation for rejecting the opinion of treating medical sources in favor of non-examining or consulting medical sources. Robinson, 366 F.3d at 1084.

A treating physician's opinion about the nature and severity of the claimant's impairments should be given controlling weight by the Commissioner if well supported by clinical and laboratory diagnostic techniques and if it is not inconsistent with other substantial evidence in the record. Castellano v. Secretary of Health & Human Services, 26 F.3d 1027, 1029 (10th Cir. 1994); 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). When a treating

physician opinion is not given controlling weight, the ALJ must
nonetheless specify what lesser weight he assigned the treating
physician opinion.  Robinson v. Barnhart, 366 F.3d 1078, 1083
(10th Cir. 2004).  A treating source opinion not entitled to
controlling weight is still entitled to deference and must be
weighed using all of the following factors:

(1) the length of the treatment relationship and the frequency of
examination;
(2) the nature and extent of the treatment relationship,
including the treatment provided and the kind of examination or
testing performed;
(3) the degree to which the physician's opinion is supported by
relevant evidence;
(4) consistency between the opinion and the record as a whole;
(5) whether or not the physician is a specialist in the area upon
which an opinion is rendered; and
(6) other factors brought to the ALJ's attention which tend to
support or contradict the opinion.

Watkins v. Barnhart, 350 F.3d 1297, 1300-1301 (10th Cir. 2003).

After considering the above factors, the ALJ must give good
reasons in his/her decision for the weight he/she ultimately
assigns the opinion.  If the ALJ rejects the opinion completely,
he/she must then give specific, legitimate reasons for doing so.
Watkins, 350 F.3d at 1301.

In questionnaires dated August 24, 2001 and September 21,
2001, Dr. Younger opined that plaintiff was not capable or
probably not capable of full time employment (R. at 220, 222).
Both reports note pain limitations (R. at 220, 222).  The August
24, 2001 report included specific functional limitations of no
heavy lifting, no prolonged walking or standing, and minimize

11

repetitive arm movements (R. at 221).  The September 21, 2001

report listed functional limitations on lifting, prolonged

walking, and repetitive arm movements (R. at 219).  The ALJ's RFC

findings limited plaintiff to lifting no more than 20 pounds

occasionally, and 10 pounds frequently (R. at 29).  This finding

is consistent with the opinions set forth in the state agency

physical RFC assessment (R. at 198), and is not contradicted by

any other medical opinion evidence in the case record.[3]

        In his decision, the ALJ stated the following:

> In the abundance of caution, the undersigned
> posed an additional hypothetical question to
> the vocational expert that further limited
> claimant to doing no prolonged walking and no
> repetitive arm movements, although the
> undersigned does not find claimant is so
> limited. The vocational expert testified that
> with those additional limitations, although
> claimant would not be capable of performing
> her past relevant work, but would be capable
> of performing other work that exists in
> significant numbers in the local and national
> economy. As examples of such work, the
> vocational expert cited the following
> sedentary, unskilled jobs, the DOT numbers,
> and the numbers of such jobs existing in
> Kansas and in the national economy, which
> such an individual could perform:
> surveillance systems monitor (500/100,000)
> and credit checker (500/55,000).
>
> The undersigned notes the numbers of jobs
> cited by the vocational expert for the
> representative sample, in both the local and
> national economies, and finds them to be
> significant.

------

[3]In fact, Dr. Box, a treating physician, opined that
plaintiff could occasionally lift up to 20 pounds (R. at 600).

12

(R. at 29-30).  The ALJ's hypothetical question to the vocational expert (VE) asked him to consider whether plaintiff could work if the limitations of no prolonged walking and no repetitive arm movements were added (R. at 805).  The VE testified that, even with these additional limitations, plaintiff could perform sedentary[4] unskilled work as a surveillance systems monitor and credit checker (R. at 806).  Thus, even when adding the specific functional limitations set forth in Dr. Younger's report, the ALJ found that the VE testimony established that plaintiff could still perform sedentary work that exists in significant numbers in the national economy.

As noted above, Dr. Younger did opine on September 17, 2001 that plaintiff could not maintain full-time employment (R. at 220).  Dr. Younger also made a brief statement on January 23, 2003 that plaintiff was disabled from fibromyalgia (R. at 27, 234).  The ALJ also noted the conclusory statement of Dr. Dailey, a treating physician, who opined on January 30, 2003 that plaintiff was unable to work (R. at 27, 208).  The ALJ noted the opinion of Dr. Box, another treating physician, who opined on November 24, 2007 that plaintiff had numerous limitations which would prevent her from working (R. at 28, 596-602).  However, the

---

[4]Sedentary work involves lifting no more than 10 pounds at a time, and involves sitting, although a certain amount of walking and standing is often necessary in carrying out job duties.  20 C.F.R. § 404.1567(a).

13

ALJ also noted the statement of Dr. Munger, another health care provider, who opined on September 30, 2003 that plaintiff was "not currently incapacitated"[5] (R. at 27-28, 505-507).  Finally, the ALJ relied on the opinions of the state agency RFC assessment in finding that plaintiff's limitations did not prevent her from working (R. at 28, 197-207).

Thus, the opinions of plaintiff's treatment providers are split on the ultimate issue of whether plaintiff is disabled.  A state agency physical RFC assessment also supports a finding that plaintiff is not disabled.  Treating source opinions on issues that are reserved to the Commissioner[6] should be carefully considered and must never be ignored, but they are never entitled to controlling weight or special significance.  This includes the ultimate issue of disability.  Giving controlling weight to such opinions would, in effect, confer upon the treating source the authority to make the determination or decision about whether an individual is under a disability, and thus would be an abdication of the Commissioner's statutory responsibility to determine

---

[5]"Incapacity" is defined to mean "inability to work, attend school or perform other regular daily activities due to the serious health condition, treatment therefor, or recovery therefrom" (R. at 505).

[6]Issues reserved to the Commissioner include: (1) whether an claimant's impairment meets or is equivalent in severity to a listed impairment, (2) a claimant's RFC, (3) whether a claimant can perform past relevant work, and (4) whether a claimant is disabled.  SSR 96-5p, 1996 WL 374183 at *2.

whether an individual is disabled.  SSR 96-5p, 1996 WL 374183 at
*2-3; Butler v. Astrue, 410 Fed. Appx. 137, 141-142 (10th Cir.
Jan. 31, 2011).  Furthermore, the court will not reweigh the
evidence or substitute its judgment for that of the Commissioner.
Hackett v. Barnhart, 395 F.3d 1168, 1173 (10th Cir. 2005); White
v. Barnhart, 287 F.3d 903, 905, 908, 909 (10th Cir. 2002).

The ALJ in this case made RFC findings in accordance with
the opinions of the state agency physical RFC assessment;
furthermore, the ALJ provided substantial evidence that
plaintiff, even with the additional specific functional
limitations set forth by Dr. Younger, could still perform
sedentary work that exists in substantial numbers in the national
economy.  In light of these facts, and given the split among
medical sources on the ultimate issue of disability, even among
treatment providers, the court finds that the ALJ did not err in
her consideration of the opinions of Dr. Younger.[7]

IT IS THEREFORE ORDERED that the judgment of the
Commissioner is affirmed pursuant to the fourth sentence of 42
U.S.C. § 405(g).

---

[7]In light of the fact that the ALJ found that plaintiff
could still perform sedentary work that exists in significant
numbers even with the inclusion of the specific functional
limitations set forth by Dr. Younger, there would have been no
discernible need to recontact Dr. Younger pursuant to 20 C.F.R.
§ 404.1512(e).

Dated this 19th day of August, 2011, Topeka, Kansas.


s/ Sam A. Crow
Sam A. Crow, U.S. District Senior Judge